IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

R.E.X., INC.,                                                          Case No. 20-30290
                                                                       Chapter 11
    Debtor.

PLAN OF REORGANIZATION OF R.E.X., INC.

ARTICLE I

INTRODUCTION

The Plan of Reorganization under Subchapter V, Chapter 11 of the Bankruptcy Code proposes to pay creditors of R.E.X., Inc. from cash flow from operations and future income. The Plan provides for two classes of secured claims; three classes of priority unsecured claims; and one class of general unsecured claims. The Plan provides for a 100 percent payment to all creditors. The Plan also provides for full payment of administrative expenses within 30 days after confirmation.

No separate Disclosure Statement will be filed as this Plan is intended to provide adequate detailed information regarding the Plan and the rights of creditors. Your rights may be affected and if you do not have an attorney, you may wish to consult one.

## ARTICLE II

## BACKGROUND

R.E.X., Inc. has been operating and owning real estate since 1977. The entity currently owns that certain shopping center located off U.S. Route 60 in Barboursville which consists of the space leased to Outback; Tortia Factory; Beauty Systems Group; Opulence Salon; Sassy's; Uncle Bill's Bar and Restaurant; and Bodega Gallery. The current gross rents are $33,100.

Additionally, R.E.X., Inc. owns other real property across from U.S. Route 60 which includes a 30,000 square foot building which houses Billy Bob's Entertainment. Prior to 2017, Billy Bob's was operated by a separate entity, Hurricane Plaza, Inc. which is controlled by the Donahue family. Beginning in May, 2017, R.E.X., Inc. took over the operations. R.E.X., Inc. did fail to pay trust fund taxes owed to both the Internal Revenue Service and the West Virginia State Tax Department. Those are the taxes which are treated in this Plan. Additionally, the Debtor owes certain real estate taxes to the Sheriff-Treasurer of Cabell County, West Virginia, which will be treated separately in the Plan.

The Debtor also owns an adjacent parcel upon which is located a Putt Putt golf course. This course was remodeled and opened in August, 2020. Anticipated cash flow from operations of Billy Bob's and the Putt Putt golf course will augment rents from the shopping center and provide the feasibility of the Plan. Those net monthly revenues are projected at $19,000 per month.

There is also an undeveloped parcel adjacent to the Putt Putt golf course which is subject to a lien in favor of Community Trust Bank. That parcel may possibly be sold to reduce the Bank's claim.

In October, 2019, the Debtor entered into a global refinancing with Community Trust Bank. The Debtor is obligated on six separate Notes. Although the Notes are not cross collateralized, different entities have guaranteed different Notes. The Debtor stipulates that Community Trust Bank is fully secured.

Later, the total debt service payments to Community Trust Bank will be approximately $31,000 per month. These include an escrow account for real estate taxes and for maintenance. The monthly rental from the Outback restaurant is payed directly to the Bank.

For different reasons, the Debtor has suffered from inadequate accounting services over the past few years. Tax returns have either not been filed or filed late. Penalties and interest have accrued. Prior to the filing of this case, the West Virginia State Tax Department had issued levies upon the tenants in the strip center. The issuance of those levies in late December, 2019 interrupted the Debtor's cash flow and resulted in the Debtor being unable to make payments to Community Trust Bank. Then, the pandemic occurred and several of the tenants unilaterally discontinued making payments. Prior to the filing, Community Trust Bank had initiated foreclosure proceedings on the different parcels.

This is a Subchapter V small business case under the provisions of Chapter 11. The U.S. Bankruptcy Court has appointed Michelle Steele as Chapter V Trustee for this case. Michelle Steele has recommended accounting practices for the Debtor and will closely monitor all income and receipts. Efforts have been made to bring rents current. The Billy Bob's Entertainment Center reopened October 17, 2020. Its weekly gross can exceed $20,000.

## ARTICLE III

## SUBCHAPTER V, CHAPTER 11 CASES

The Small Business Reorganization Act of 2019 provides that a small business debtor may elect at the time of the filing to proceed under a new Subchapter V of Chapter 11. In a Chapter V a Trustee is appointed in every case tasked primarily with facilitating a consensual Plan. The Court conducts a mandatory status conference within the first 60 days of the case. There is no required Disclosure Statement of Unsecured Creditors Committee. Only the debtor may file a Plan but the debtor must do so within 90 days of the petition date. Plans may be confirmed consensually or through cram down.

Election to proceed under Subchapter V is at the discretion of the debtor. A Subchapter V debtor is subject to many of the same requirements as a non-electing small business debtor, including the filing of tax returns, monthly operating reports, and attendance at meetings of creditors.

In this case the Debtor is seeking confirmation under Section 1191(a) which effectively requires that all impaired classes accept the Plan. Even though the Debtor is seeking a consensual Plan, Plan payments will be made through the Chapter V Trustee. A Plan that is not confirmed consensually under Section 1191(a) can still be confirmed as a non-consensual Plan under Section 1191(b). To confirm a non-consensual Plan, the Court must find that the Plan does not discriminate unfairly and that the Plan is fair and equitable with respect to each class of impaired claims. Because this is a 100 percent Plan, the Debtor believes that it is fair and equitable.

## ARTICLE IV

## SIGNIFICANT EVENTS DURING THE CASE

During the pendency of this case, the Debtor has taken several steps to stabilize the business and to generate future cash flow to fund the Reorganization Plan.

The Debtor has entered into an adequate protection provision with Community Trust Bank which provides for interest only for a period of three months and resumption of the funding of escrow accounts. The Debtor has retained the services of Paul Khoury, CPA to prepare missing tax returns to be filed with the Internal Revenue Service and the West Virginia State Tax Department. An accurate calculation of the taxes is a prerequisite for approval of a Plan. Additionally, the Debtor has established future accounting practices which provide accurate Monthly Operating Reports and an analysis of cash flow.

The Debtor obtained a permit from the Cabell County Health Department to reopen Billy Bob's, the Children's Entertainment Center. This facility generates cash flow which supplements rental income from the strip center.

The Debtor has taken steps to improve management performance so that rents will be collected on a timely basis.

## ARTICLE V

## CLASSIFICATION OF CLAIMS

| | |
|---|---|
| Class A | All allowed administrative expense claims. |
| Class P-1 | Claim of the Internal Revenue Service. |
| Class P-2 | Claim of the West Virginia State Tax Department. |
| Class P-3 | Claim of the Sheriff-Treasurer of Cabell County, West Virginia. |
| Class S-1 | Secured claim of Community Trust Bank. |
| Class S-2 | Secured claim of Betson Entertainment. |
| Class U | Unsecured claims. |

## ARTICLE VI

## ADMINISTRATIVE EXPENSES

The Debtor estimates administrative expenses to be approximately $7,500.  This includes quarterly fees to the Office of the U.S. Trustee and any remaining attorney fees as to be approved by the Court.  These expenses shall be paid within 30 days after confirmation.

## ARTICLE VII
## TREATMENT OF CLAIMS

Class P-1    Class P-1 is the priority claim of the Internal Revenue Service. The Service has filed a Proof of Claim in the sum of $60,896. Paul Khoury, the Debtor's Court-appointed CPA, has now prepared certain missing tax returns and has stated that the total amount owed to the Internal Revenue Service is $61,823. The Debtor will pay this claim over a period of 60 months, plus statutory interest. If the Internal Revenue Service disputes the Debtor's calculation of its claim, then payments will be made until such time as the parties can come to an agreement about the exact amount of the claim. Any unresolved dispute will be submitted to the U.S. Bankruptcy Court for the Southern District of West Virginia for final determination.

In the interim, the Debtor will make payments at the rate of $1,500 per month.

Class P-2    Based upon calculations of the Debtor's accountant, Paul Khoury, the Debtor owes the West Virginia State Tax Department the sum of $27,212. This claim is based upon recently prepare tax returns and includes taxes for the period beginning May, 2017. The Debtor will make payment on this claim over a period of 60 months, plus statutory interest, at the rate of $600 per month. If the West Virginia State Tax Department disputes the Debtor's calculation of its claim, then payments will be made until such time as the parties can come to an agreement about the exact amount of the claim. Any unresolved dispute will be submitted to the U.S. Bankruptcy Court for the Southern District of West Virginia for final determination.

In the interim, the Debtor will make payments at the rate of $ _600.00_ per month.

Class P-3    Class P-3 is the priority claim of the Sheriff of Cabell County, West Virginia. The Debtor owes real property taxes to the Sheriff of Cabell County totaling the approximate sum of $41,673. These taxes will be paid in the Plan over a period of 12 quarters with each quarterly payment in the amount of $1,166.

Class S-1    Class S-1 is the secured claim of Community Trust Bank. This claim is secured by several parcels of real property owned by the Debtor and based upon six separate Promissory Notes. The Bank has entered into an agreement with the Debtor allowing the use of cash collateral. Payment of interest only for the months of November, December, 2020, and January, 2021. Then the Debtor will resume regular contractual payments. The monthly rental payment from Outback Steak House goes directly to the Bank. The Debtor is also a party to two separate escrow contracts with the Bank providing for funding of real property taxes and for maintenance. Those escrow accounts will be revived. This claim is fully secured.

The Debtor's contractual payments to Community Trust Bank are $28,329, exclusive of the payment on a note secured by Kings Gate. The Kings Gate property was owned by a non-debtor and was foreclosed upon by the Bank prior to the filing of this case. The Debtor is not certain as to the amount of that deficiency and how the Bank will modify that note. The Debtor acknowledges that the Kings Gate property was cross

| | |
|---|---|
| | collateralized with other Debtor property. The total amount owed to Community Trust Bank is $3,554,615, plus the deficiency from Kings Gate. |
| Class S-2 | Class S-2 is the Lease Purchase Agreement with Betson Entertainment Company. This claim is secured by a lien on video games, token machines and other equipment used in connection with the operation of Billy Bob's Wonderland. This claim will be paid according to contractual terms |
| Class U | Class U is the unsecured claim of William Watson, attorney at law. Debtor acknowledges an obligation of $65,000 which shall be paid at the rate of $1,100 per month. The Debtor is also a party to two separate PPP loans with the SBA. Those loans, as reflected on the exhibit, are forgivable. |
| Class D | Class D is the disputed claim of MVB which is the assignee of the claim of First State Bank of Barboursville. Prior to the filing of this case, the Debtor and First State Bank of Barboursville were involved in a dispute regarding the Bank's claim which is in the approximate sum of $157,000. The Debtor has asserted that because of accounting irregularities, the claim of First State Bank of Barboursville was improperly inflated and perhaps even illegally created. The Debtor will ask permission to employ Special Counsel to handle this claim. In the event the Debtor is successful in erasing the claim, and/or receiving monies, then the proceeds will be used to accelerate the Plan payments. In the event that First State Bank of Barboursville (now MVB) is successful, then the claim will be paid without interest over a period of 60 months. |

## ARTICLE VIII

## TAX HISTORY

At the time of the filing of this Plan, the exact amount owing to the West Virginia State Tax Department and the Internal Revenue Service had not been agreed upon. At the commencement of the case, the Debtor was delinquent on filing certain tax returns and each of the Proofs of Claim filed by the taxing authorities contained estimates.

The Debtor employed Paul Khoury, CPA to prepare missing tax returns. Paul Khoury has now completed that work and the returns will be made available to the taxing authorities. Again, at the time of the filing of this Plan, the taxing authorities have not had an opportunity to review the recently completed tax returns. The figures set forth in the treatment of claims is based upon Mr. Khoury's work product. If the taxing authorities dispute the Debtor's calculation of the taxes, then the parties will negotiate a process to determine the exact amount of each claim. The Debtor will make the payments as set forth in the Plan pending a final agreement on the amount of each claim.

The claim of the West Virginia State Tax Department relates back to a period prior to May, 2017 and provides estimates for unpaid taxes from Billy Bob's Entertainment Center. The Debtor took over Billy Bob's in May, 2017 and the Proof of Claim should be changed to reflect that time period. The State Tax Department may have a claim of liability against other entities.

## ARTICLE IX

## MEANS OF IMPLEMENTATION

This Plan will be funded by rental revenues received from the tenants at the shopping center and additional revenues generated by the operation of Billy Bob's Entertainment Center and the Putt Putt golf course. The Putt Putt golf course is a seasonal operation and was only recently reopened after being closed for almost five years. The course was substantially redone and is already generating positive cash flow.

As noted elsewhere, the operation of Billy Bob's Entertainment Center is subject to restrictions of the Cabell County Health Department regarding public facilities during the pandemic. Billy Bob's has been approved to handle up to 50 percent occuOctober 22, 2020pancy. This translates into approximately _200_ persons per day capacity. Likewise, through PPP funds, Billy Bob's was remodeled with games being upgraded. The successful operation of this entertainment facility will be crucial to the business turnaround. The Debtor believes that it can move forward to reorganize and to show a stronger financial outcome with accurate financial records.

Financial projections are attached as an exhibit.

Michelle Steele, Chapter V Trustee, will be closely monitoring the operations of the business during the pendency of the Plan. In the past, the Debtor has suffered from lax management oversight and sloppy accounting procedures. Accurate financial reports will be made available to the Chapter V Trustee and to the Office of the U.S. Trustee and to all creditors and parties in interest.

## ARTICLE X

## EXECUTORY CONTRACTS

The Debtor is a party to several leases at the Strip Center as identified on Exhibit __1__. All tenants who are current with lease payments will have those leases assumed by the Debtor. The amount of monthly rents is set forth in the exhibits.

## ARTICLE XI

## LIQUIDATION ANALYSIS

The Debtor does own substantial real property. Yet, the property is subject to a large claim in favor of Community Trust Bank and the ability to pay the Bank's claim is conditioned upon the Debtor operating as a going concern and generating rent payments. The property requires ongoing maintenance and repairs and the payment of real estate taxes. The Debtor does state that Community Trust Bank is fully secured.

In the event that this case were converted to a Chapter 7 Liquidation, it is likely that Community Trust Bank would be given permission to foreclose and it is more probable than not that the proceeds at a foreclosure sale would be less than the Bank's claim with the result that other creditors would not receive any dividend payments.

Even though the Debtor shows equity in the real property, because of the large claim of Community Trust Bank, there is no assurance that a foreclosure would result in the realization of that equity. The Debtor's opinion of value is based upon a going concern.

The Debtor is willing to consider bona fide offers for a portion of the property during the term of the Plan. Any such sale would be subject to approval by the U.S. Bankruptcy Court.

## ARTICLE XII

## SURPLUS REAL PROPERTY

At the time of the filing of this case, Barbara Donahue and Rex Donahue were parties to a Real Estate Purchase Agreement with Applied Properties which had entered into an agreement to pay $275,000 for real property known as the go cart track. This property is adjacent to the Putt Putt golf course. The property was transferred to R.E.X., Inc. to allow it to be sold free and clear of liens with liens to attach to the proceeds. Because of numerous Federal and State tax liens, it would not have been possible for the Donahues, individually, to sell the property. The Office of the U.S. Trustee and Community Trust Bank objected to the Debtor's request to expedite a sale. The request to expedite the sale was based upon time constraints of the purchaser who had negotiated a Motorcycle Franchise Agreement with Indian Motorcycle. The Purchaser has now withdrawn its offer. Nevertheless, the Debtor believes that this property has value and will either be sold pursuant to the provisions of 11 U.S.C. § 363 or valued in the Plan and surrendered to the Bank.

## ARTICLE XIII

## GENERAL PROVISIONS

1. <u>Definitions</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply.

2. <u>Effective Date</u>. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the Order of Confirmation. If, however, a stay of the Confirmation Order is in effect on that date, the effective date will be the first business day after the date on which the stay of the Confirmation Order expires or is otherwise terminated.

3. <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

4. <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

5. <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of West Virginia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

/s/ Joseph W. Caldwell
Joseph W. Caldwell, Esquire
WV Bar No. 0586
CALDWELL & RIFFEE, PLLC
P.O. Box 4427
Charleston, WV 25364
Phone: 304-925-2100
joecaldwell@frontier.com